TUMEY<br>vs.<br>KNOX.

---

## *Ward vs. Bank of Kentucky.*

Error to the Greenup Circuit; W. P. ROPER, Judge.

*Powers of attorney. Promissory notes. Custom of Merchants. Banks.*

Chief Justice BIBB delivered the Opinion of the Court.

On the 8th of December, 1821, James Ward executed a power of attorney, and on the 21st of December, 1821, Thompson Ward executed a power of attorney, each signed and sealed, and are in the same words (*mutatis mutandis;*) the recital of one, shows the power given by the other.

"Know all men by these presents, that I do hereby authorize and empower brother Abraham Ward to sign my name to any note, or notes, offered by the said Abraham Ward, to the Bank of Kentucky for discount, for his benefit, to any amount not exceeding three thousand dollars, which power may be used by the said Abraham, either in the principal Bank, or any of its branches, whose acts and deeds in the premises shall be as binding, as though I had done the same myself."

The Bank sued James and Thompson Ward, the surviving obligors, upon a note executed by Abraham Ward, and in the name of said Thompson and James, by said Abraham as their attorney, as follows:

"$2880. We Abraham Ward principal, and Thompson Ward, and James Ward, jr. securities, or either of us, promise to pay the President, Direc-

DEBT.

Case 12.

April 21.

Power of attorney.

Note sued on.

WARD
vs.
BANK OF KY.

tors & Co. of the Bank of Kentucky, the sum of twenty-eight hundred and eighty dollars, sixty days after date, for value received, June 3, 1823."

Judgment of circuit court.

To this, the defendants pleaded *non est factum*, and upon an agreed case, the law and fact was submitted to the court, and judgment rendered thereon for the plaintiff.

Facts agreed.

The facts agreed, show that Abraham Ward, for himself, and as attorney for his brothers, executed from time to time eighteen notes, in the form before given, each note, payable at sixty days after date, viz:

No. 1, $ 500, date, 22 Jan'y. 1822, due 23—26 March.
No. 2, 1000, " 8 Feb'y. 1822, " , 9—12 April.
No. 3, 1000, " 8 March, 1822, " 7—10 May.
No. 4, 500, " 26 March, 1822, " 26—28 May.
No. 5, $1500, " 5 April, 1822, " 4—7 June.
No. 6, 500, " 10 May, 1822, " 9—12 July.
No. 7, 500, " 28 May, 1822, " 27—30 July.
No. 8, 1500, " 28 May, 1822, " 28—30 July.
No. 9, $ 500, " 12 July, 1822, " 10—13 Sept.
No. 10, 1000, " 12 July, 1822, " 10—13 Sept.
No. 11, 2000, " 12 July, 1822, " 10—13 Sept.
No. 12, 2500, " 13 Sept. 1822, " 12—15 Nov.
No. 13, 2500, " 15 Nov. 1822, " 14—17 Jan. 1823.
No. 14, 500, " 3 Dec. 1822, " 1— 4 Feb. 1823.
No. 15, 2500, " 17 Jan. 1823, " 13—21 Mar. "
No. 16, 500, " 28 Jan. 1823, " 29 Mar. 1 April, "
No. 17, 2940, " 1 April, 1823, " 31 May, 1 June, "
No. 18, 2880, " 3 June, 1823, " 2—5 August, this last the note sued on.

It appears by the statement of the evidence submitted, that

No. 4. was executed for the renewal of No. 1.
No. 5. was executed for the renewal of No. 2. and the excess for A. Ward's accommodation.
No. 6. was for the renewal of No. 3.
No. 7. was for the renewal of No. 4.
No. 8. was for the renewal of No. 5.
No. 9. was for the renewal of No. 6.
No. 10. was for the renewal of No. 7. the excess for A. Ward's accommodation.
No. 11. was for the renewal of No. 8 and 9.
No. 12. was for the renewal of No. 10 and 11, the deficiency of 500 dollars, paid by A. Ward.
No. 13. was for the renewal of No. 12.
No. 14. was for the accommodation of Abraham Ward.
No. 15. was for the renewal of No. 13.
No. 16. was for the renewal of No. 14.
No. 17. was for the renewal of No. 15 and 16.
No. 18. was for the renewal of No. 17.

It appears, therefore, that when the note No. 4, was executed on the 26th March, 1822, Abraham Ward had executed notes to the amount of the limit of $3000; but No. 4, being discounted for the renewal of No. 1, the Bank had a debt against Abraham, James and Thompson Ward, of two thousand five hundred dollars, which is short of the limit. But upon the execution and discount of No. 5, for renewal of No. 2, of $1000, and the balance of $500, for Abraham's accommodation, the Bank then held, viz: on the 5th April, 1822, debts by notes, No. 3, 4 and 5, amounting to $2,500. But on the 12th July, No. 9 was discounted for the renewal of No. 6, of $500; No. 10, was discounted for the renewal of No. 7, of 500, due 27 and 30 July, and the balance of $500, for the accommodation of Abraham Ward, and on the same day, No. 11, was discounted, bearing date on the 12th July, for $2000, the renewal of No. 8 and 9. It is to be remarked, that No. 9, 10 and 11, are each dated on the 12th of July, 1822, and each payable on the 10 and 13 September, these three notes, so dated on the same day, and payable on the same day, amount to $3,500; but waiving the note, No. 9, the other two notes of this date, No. 10 and 11, were held for renewal of No. 7, 8 and 9, and for accommodation granted, of $500, loaned to Abraham Ward; so that on the 12th July, the Bank did hold and claim debts to the amount of $3000, by notes 10 and 11. When the notes discounted on the 12th July, fell due on the 13th September, Abraham Ward reduced his debt in Bank to $2,500, by getting No. 12, discounted for that amount, for renewal of No. 10 and 11, and by paying up the balance due, of No. 10 and 12. On the 3rd December, 1822, the accommodation of Abraham Ward, was again increased to $3000, by discount of No. 14 due 1 and 4 February, the Bank then holding No. 12, for $2,500, due 14 and 17 July, 1823.

The Bank claims that Abraham Ward had power under the letters of attorney, to bind James and Thompson Ward by exchange of notes, renewals,

*[margin:]* WARD vs. BANK OF KY.

*[margin:]* Argument for the Bank.

WARD
vs.
BANK OF KY.

swelling and diminishing his debt to the Bank, from time to time, so as the debt, at no one time, exceeded three thousand dollars.

Power to an attorney to execute promisory notes for discount at Bank to a certain amount, does not authorize the renewal of said notes.

This court cannot assent to such construction of the letters of attorney. They did not confer a continuing maintaining power to exchange notes, prolong the time of payment, and raise the debt up to the limit of three thousand dollars, after it had been in part paid, and reduced below the limit. If the intent had been to confer the power of renewing notes from time to time, and after any reduction of the debt below the limit to execute others for borrowing again; to keep a continuing never ending debt in Bank, so as not to exceed at one time three thousand dollars, other words than those employed, were necessary to concede such powers. As expressed, the letters conferred authority on the attorney to execute a note or notes to the amount of three thousand dollars, when such note or notes were once executed and delivered, the power was executed and ceased. A power to sign a note or notes, and bind the party to any amount, not exceeding three thousand dollars, cannot authorize the execution and delivery of notes to the amount of twenty four thousand dollars.

Effect of the custom of merchants here, in their transactions in the Bank —by Judge Mills.

To this construction of the power, Judge Mills does not assent, although he deems it correct as to ordinary transactions. But he conceives, that in banking transactions, which are generally ruled by the law merchant, where the custom or practice gives the law of the case, a more liberal construction ought to be given, and that the authorities in mercantile transactions warrant it.

It seems to this court, Judge Mills dissenting, that upon the facts stated and agreed, the law is for the defendants in the court below. It is, therefore, considered by this court, that the judgment of the circuit court be reversed, and that the case be remanded to that court, with direction to enter judgment for the defendants.

Plaintiffs in this court to recover their costs.

*Mayes* and *M'Connell*, for plaintiffs; *Crittenden* for defendants.